IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARSHALL E. DOWELL,
    Plaintiff,

v.                                                          Civil Case No. 3:14cv263

G & G MOTORCYCLES, INC., et al.,
    Defendants.

## MEMORANDUM OPINION

This matter came before the Court for a bench trial on October 16, 2014. The case presents two issues: 1) does the doctrine of recoupment entitle the defendants to a reduction of the amount they owe the plaintiff, and 2) if so, how much? The Court finds that the defendants are entitled to a reduction in the purchase amount, but still owe the plaintiff $97,751.69.

## I. FINDINGS OF FACT

In 2003,[1] Marshall Dowell and his partner, Greg Stoneman, agreed to sell their Harley Davidson dealership to George Wills[2] for $12,000,000. Apparently, Wills paid $7,000,000 of the purchase price at closing. To complete the purchase, Wills signed promissory notes totaling $5,000,000 payable to Dowell and Stoneman. Because Dowell owned 51% of the dealership, the note to him was slightly more than half the amount due—$2,764,200.

Dowell and Stoneman sold the dealership as an on-going business, including assets, such as inventory and down payments, that change daily as customers do business with the dealership. In recognition that the precise value of the assets would change between the date of the

---

[1] Given the date of the original transaction, the defendants have asserted a statute of limitations defense in their answer, but the parties did not present evidence on this issue at trial. (Dk. Nos. 6 & 19.) Consequently, the Court makes no finding on this issue.

[2] Upon execution of the agreement, Wills assigned his rights to his corporation, G & G Motorcycles. Wills signed a guaranty of any amount due, so, for the purposes of this opinion, Wills and G & G have the same liability, and the Court will refer to them both as "Wills."

agreement to purchase and the date of closing, the Asset Purchase Agreement ("Agreement") provided for an adjustment of the purchase price after the parties conducted an inventory of the assets conveyed. To the extent the value of those was greater or less than $1,500,000, the parties would adjust the price up or down by the difference between $1,500,000 and the actual value of the assets. The parties also agreed to adjust the promissory notes to reflect the final purchase price.

To ascertain the value of the assets, the parties agreed to conduct a joint audit no later than 45 days from the date of closing. They never did so. Instead, on March 30, 2004, the day before closing, Dowell conducted his own audit and determined the assets' value as $1,337,700—$162,300 less than the original payment allocated to the assets. With this adjustment downward, the note to Dowell was reduced to $2,681,427.

The note provided for interest at the rate of 6% per year, and a charge of 5% of any installment payment not received by Dowell within 7 days of the due date. (Pl.'s Trial Ex. 4.) The note also provides that Wills must pay the amount due "without offset."

When the final payment became due, Wills refused to pay it, claiming that the assets he purchased had a lower value even than Dowell's inventory, and that he therefore owed nothing.

## II. DISCUSSION[3]

The main question before the Court is whether Wills may assert the defense of recoupment.[4]

---

[3] The Court will apply Virginia law in this case. In a diversity case, such as this one, the Court applies "the substantive law of the forum state." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79, 58 S.Ct. 817 (1938). The Agreement also contains a choice of law provision dictating the application of Virginia substantive law to any disputes. (Pl.'s Ex. 1, Asset Purchase Agreement, ¶ 12.)

[4] Recoupment is an affirmative defense, which a party must specifically plead. *See Cummings v. Fulghum*, 261 Va. 73, 540 S.E.2d 494 (2001); *Rosenbloom, et al., v. Integrated Sec. Sys., Inc.,*

2

### *1. Recoupment is not barred by the terms of the note.*

The note expressly excludes "offset" in paying off the loan.[5] But offset does not mean the same thing as recoupment, so the exclusion of offset from the contract does not preclude Wills' right of recoupment. Offset means "a defendant's counter demand against the plaintiff, arising out of a transaction independent of the plaintiff's claim," or "a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Black's Law Dictionary* (9th ed. 2009). In contrast, recoupment is "the getting back or regaining of something, especially expenses" and "the withholding, for equitable reasons, of all or part of something that is due." *Id.*

The Supreme Court of Virginia defines recoupment similarly: "[r]ecoupment, therefore is the right of the defendant to cut down or diminish the claim of the plaintiff in consequence of his failure to comply with some provision of the contract sought to be enforced, or because he has violated some duty imposed upon him by law in the making or performance of the contract." *Nat'l Bank & Trust Co. v. Castle*, 196 Va. 686, 695, 85 S.E.2d 228, 234 (1955); *see Rosenbloom*,

---

2007 WL 2408452 (Va. Cir. Ct. 2007) (Trial Order) ("In Virginia, statutory recoupment may be brought as an affirmative defense. . . ."); Fed. R. Civ. P. 8.Wills identified his recoupment claim in his answer, but he did not use the term recoupment. Federal courts have held "an affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense." 5 Fed. Prac. & Proc. Civ. § 1274 (3d ed.). Wills put the plaintiff on fair notice by saying in the answer, "Defendants admit delivering the Note . . . , but are unsure by what is meant by 'without offset,' and that portion of the allegation is therefore denied." (Def.'s Answer ¶ 4.). The answer also included statements that the defendants "affirmatively allege that nothing is owed on the Note referenced in the Complaint and that the plaintiff has been fully paid," (Id. ¶ 9.), and that Dowell "is failing to credit the defendants with $170,441 for which they are entitled pursuant to the attached statement. . . .". (Id. ¶ 10.) Wills' approach may not be a model of how to plead an affirmative defense, but it tells the plaintiff what Wills is relying on.

[5] "Offset" and "setoff" mean the same thing. *Citizens Bank of Md. v. Strumph*, 516 U.S. 16, 18 (1995).

2007 WL 2408452, at *1.[6] In addition to common law recoupment, Virginia has a statutory provision allowing recoupment, with, for purposes of this case, the same elements. Va. Code § 8.01-422; *Lake Holiday Country Club, Inc. v. Teets*, 56 Va. Cir. 113 (2001) (discussing the shared elements of common law and statutory recoupment).[7]

The Fourth Circuit has also recognized the difference between recoupment and offset:

> [t]he doctrines of setoff and recoupment are often confused. Setoff is a counterclaim arising from an independent claim that the defendant has against the plaintiff. Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim.

*FDIC v. Marine Midland Realty Credit Corp.*, 17 F.3d 714, 722 (4th Cir. 1994) (citing *First Nat'l Bank v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n.1 (4th Cir. 1982)).

The note requires payment without offset, but does not forbid recoupment. Thus, the contractual preclusion of "offset" does not mean that Wills may not assert recoupment as an equitable defense.

### 2. Wills is entitled to recoupment.

The elements of the defense of recoupment are that the claim 1) arises from the same transaction or occurrence as the main claim, 2) seeks relief of the same kind and nature as that sought by the main claim, and 3) is purely defensive. *Berger v. City of North Miami, Fla.*, 820 F. Supp. 989, 992 (E.D. Va. 1993); *see City of Richmond*, 205 Va. at 925, 140 S.E. 2d at 697. Wills

---

[6] The elements of common law recoupment are: the recoupment claim "must arise out of the same transaction; the amount need not be liquidated; there can be no recovery over; the right to recoupment must be shown by a plea in the general issue, or *nil debet*, or *non assumpsit*; it cannot be used against a sealed instrument; and purely equitable defenses cannot be set up." *City of Richmond v. Chesapeake & Potomac Tel. Co. of Va.*, 205 Va. 919, 925, 140 S.E.2d 683, 687 (1965).

[7] *See* Va. Code § 8.3A-305 and § 8.01-117; *Cummings*, 261 Va. at 77-78, 540 S.E.2d at 496-97; *Rosenbloom*, 2007 WL 2408452, at *1 (trial order) (discussing both statutory and common law recoupment); *see Berger v. City of North Miami, Fla.*, 820 F. Supp. 989, 992 (E.D. Va. 1993) (applying common law recoupment); *City of Richmond*, 205 Va. at 925, 140 S.E.2d at 683.

meets all three elements. First, he claims that he is entitled to recoupment from the transaction that gave rise to the note—the sale of the business. Second, he seeks the same sort of relief as Dowell—a determination of the correct amount to pay under the note. Finally, he asserts recoupment purely as a defense to Dowell's claim. Wills wants to lower Dowell's claim based on Dowell's alleged overcharge of the value of the assets conveyed.

Wills has identified a number of assets for which he claims recoupment. Pursuant to paragraph 1.a of the Asset Purchase Agreement, the assets to be sold included "order back log, prorated work in progress, prepaid items and customer deposits." Relying on this language, Wills wants to reduce the purchase price by deducting the following: 1) additional adjustments made to inventory quantities within the 45 day period; 2) a motorcycle listed twice in the inventory; 3) used motorcycle included on inventory purchased list, sold to a customer before closing; 4) a motorcycle G&G paid Dowell twice for; 5) "holdback"—a refund from Harley Davidson Motor Company on motorcycles purchased; 6) parts and merchandise overvalued because of their age; 7) various customer deposits; 8) free services; and 9) COBRA insurance and rent deposits. (Dk. No. 54 at 5-6; Defs.' Trial Ex. 2A.)

While Dowell contests the availability of recoupment, he does not contest the value assigned by Willis to items omitted from the inventory. The purchaser of an on-going business, however, must absorb certain costs of doing business. The Court finds that slow moving inventory, rent payments, and COBRA payments fall into this category of expenses, and consequently Wills may not receive any credits for these amounts. (Defs.' Trial Ex. 2A, lines 6 & 14.) He may, however, recoup the value of the other items.

### *3. Wills proved the amount of recoupment to a fair degree.*

Wills has proven to a reasonable degree of certainty the amount of the owed credits. *See Shepherd v. Davis*, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003) (citing *Carr v. Citizens Bank & Trust Co.*, 228 Va. 644, 652, 325 S.E.2d 86, 90 (1985) (noting the party asserting damages must show with "reasonable certainty the amount of damages and the cause from which they resulted."). Damages based on uncertainties, contingencies, or speculation cannot be recovered. *Barnes v. Quarries, Inc.*, 204 Va. 414, 418, 132 S.E.2d 395, 397-98 (1963).

The Court finds the total amount of recoupment to be $232,825.64. Because Dowell has responsibility for 51% of these costs, the Court reduces the amount due to Dowell to $118,741.07. After Wills' final payment, $69,735.47 remained payable to Dowell. The Court adds a 5% late charge, as stated on page two of the note. Finally, the Court applied the 6% per annum interest for 66 months, beginning in May 2009 and ending November 2014. (Pl.'s Trial Ex. 1 ¶ 2.)[8] The total amount owed to Dowell, taking into consideration proper recoupment, is $97,751.69.[9]

### III. CONCLUSION

The Court finds that Wills is entitled to reduce the purchase price by $118,741.07, leaving an unpaid balance, attributable to Wills and G&G, of $97,751.69.

---

[8] The Court applied non-compounding interest, which accords with each party's submitted payment schedule. (Pl.'s Trial Exs. 7 & 12.)

[9] Dowell argues the defendant acted with unclean hands and may not assert an equitable defense. "The law of Virginia and the federal common law are the same: no party asserting an equitable claim or an equitable defense may himself or herself be 'tainted with inequitableness or bad faith relative to the matter in which he [or she] seeks relief, however improper may have been the behavior" of the other party.'" *Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F. Supp. 2d 576, 596 (E.D. Va. 2010) (citing *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993 (1945)). As stated from the bench, the Court finds that Wills did not act with unclean hands. He may have delayed in communicating with Dowell, but there is no evidence of bad faith.

The Clerk is directed to send this Memorandum Opinion to all counsel of record.

The Court will enter the appropriate order.

Date: 11/24, 2014
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge